## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Altanie Hansen,<br><br>    Plaintiff,<br><br>v.<br><br>Santander Bank, N.A.; UAR Direct, LLC,<br>d/b/a United Auto Recovery; 11th Hour<br>Recovery, LLC,<br><br>    Defendants | Case No. 22-cv-3048 (SRN/TNL)<br><br><br>**ORDER ON DEFENDANTS'**<br>**MOTION TO DISMISS** |

Ryan D. Peterson, Peterson Legal, PLLC, 6600 France Avenue, Suite 602, Edina, MN 55435 for Plaintiff.

Dawn L. Gagne and Patrick H. Elliott, Elliott Law Offices, PA, 2409 W 66th St, Mpls, MN 55423 for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Motion to Dismiss [Doc. No. 10] filed by Defendants Santander Bank, N.A. ("Santander"), UAR Direct, LLC ("UAR"), and 11th Hour Recovery, LLC ("11th Hour"). [1] Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court **GRANTS** in part and **DENIES** in part Defendants' Motion to Dismiss.

---

[1] Defendants note that Santander Bank, N.A. and UAR Direct, LLC are misnomers, and the correct entities are "Santander Consumer USA Inc." and "United Nationwide Recovery LLC." Counsel for the parties have agreed to correct the party names accordingly after a ruling on Defendants' Motion to Dismiss. (Mem. in Supp. of Defs.' Mot. to Dismiss [Doc. No. 12] ("Defs.' Mem."), at 2 n.1.) This Order will apply to these entities as well.

## I.    BACKGROUND

Plaintiff, Altanie Hansen, alleges violations of the Fair Debt Collection Practices Act ("FDCPA") and Minnesota statutory and common law arising out of the Defendants' attempt to repossess her vehicle. (*See generally* Am. Compl. [Doc. No. 7].)

### A.    Factual Background

Plaintiff alleges that on November 15, 2021, she entered into a consumer credit transaction with Santander for the purchase of a 2016 Kia ("the Vehicle"). (*Id.* ¶ 13.) She alleges that she fell behind on payments for the Vehicle sometime in 2022, and in October 2022, Santander hired UAR to aid in repossessing the Vehicle, and that UAR assigned repossession to 11th Hour. (*Id.* ¶¶ 14-16.)

At around 10:00 PM on October 27, 2022, Plaintiff alleges that she drove the Vehicle to a McDonald's parking lot in north St. Paul. (*Id.* ¶ 17.) Plaintiff alleges that while she was waiting in the McDonald's parking lot for her food, a car pulled up next to hers with its "brights" on. (*Id.* ¶¶19-20.) She alleges that the driver sat in his car for about 15-20 minutes and kept looking over at her Vehicle, "and was situated in such a way that it was apparent that Plaintiff was sitting in the vehicle." (*Id.* ¶¶ 21-22.)

Plaintiff alleges that she suddenly felt the Vehicle jerk with her in it, and she thought that another car had collided with hers. (*Id.* ¶¶ 23-24.) Plaintiff alleges that when she got out of her car, she saw that a tow truck was lifting her Vehicle off the ground. (*Id.* ¶ 25.) Plaintiff contends that the driver of the tow truck walked up to her and shined a flashlight in her eyes, and that the other driver got out of his vehicle and also shined a flashlight in her eyes. (*Id.* ¶¶ 26-27.) Plaintiff alleges that both men were employees of 11th Hour, and

that they informed her that they were taking her car on behalf on Santander, and the Vehicle belonged to the bank, not to her. (*Id.* ¶¶ 30-32.)

Plaintiff alleges that she told the two men that they could not take the Vehicle, because she was in it and that they needed to leave. They once again told her the Vehicle was not hers but belonged to the bank, so they were going to take it. (*Id.* ¶¶ 33-34.) She alleges that they told her that she could walk to a nearby gas station or to the McDonald's restaurant, even though the McDonald's was not open to guests at that time. (*Id.* ¶ 35.)

Plaintiff alleges she again told them they needed to leave, and they responded that they would sit there all night until she left the Vehicle. (*Id.* ¶¶ 36-38.) Plaintiff alleges that she got back into the Vehicle and sat there while the two men inspected the outside of the Vehicle and took photographs. (*Id.* ¶ 39.) Plaintiff alleges she could not leave with the Vehicle for some time, because it was blocked in by the tow truck and the other car. (*Id.* ¶¶ 40-41.) She alleges that she discovered the next day that her Vehicle had been damaged when it was lifted off the ground with the tow truck. (*Id.* ¶ 42.)

### B.    Procedural History

On December 8, 2022, Ms. Hansen filed a Complaint in this Court against Santander, UAR, and ABC Corporation, Inc. ("ABC") for violations of breach of the peace, conversion, and trespass to chattel; and against UAR and ABC for violations of the FDCPA § 1692 *et. seq.* (*See* Compl. [Doc. No. 1].) Plaintiff identified ABC as an unknown repossession company operating in and around the Twin Cities metropolitan area, and stated that she would amend the Complaint when she discovered its true identity. (*Id.* ¶ 7.) On January 30, 2023, Plaintiff filed an Amended Complaint, substituting 11th Hour

Recovery for ABC Corporation and adding a request for punitive damages pursuant to Minn. Stat. § 549.20; no other changes were made. (*See generally* Am. Compl.) Defendants then filed this Motion to Dismiss Plaintiff's FDCPA claim against UAR and 11th Hour; the breach of peace, conversion, and punitive damages claims against all Defendants; and Plaintiff's trespass to chattel claim against Santander and UAR. (Mot. to Dismiss.)

## II.   DISCUSSION

### A.   Legal Standard

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court accepts the facts alleged in the complaint as true and views those allegations in the light most favorable to the plaintiff. *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). However, the Court need not accept as true wholly conclusory allegations or legal conclusions couched as factual allegations. *Id*. To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

**B.     Analysis**

**1.     Fair Debt Collection Practices Act (Count I)**

Plaintiff alleges that Defendants UAR and 11th Hour violated the FDCPA during the attempted repossession, because they did not have the present right to possess the Vehicle due to the breach of the peace. (Mem. in Opp'n to Defs.' Mot. to Dismiss [Doc. No. 19] ("Opp'n"), at 11-14.) Defendants argue that they are not debt collectors for purposes of the FDCPA beyond § 1692f(6) and that a breach of the peace cannot create liability under Minnesota law for FDCPA § 1692f(6). (Defs.' Mem. at 12-13.)

**a.     Defendants as FDCPA "Debt Collectors"**

To be bound by the provisions of the FDCPA, Defendants must be found to be "debt collectors." Debt collector is defined by FDCPA § 1692a(6):

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another…. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C.A. § 1692a(6).

§ 1692a(6) provides both a general-purpose and limited-purpose definition of debt collector for purposes of the FDCPA. Companies that enforce security interests are not "debt collectors" under the general FDCPA definition, but they do meet the "limited-purpose definition" for liability under FDCPA § 1692f(6). *See Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1036 (2019). Repossession companies like 11th Hour are primarily in the business of the enforcement of security interests, so they are subject to §

1692f(6). "Courts in this district have plainly held that § 1692f(6) of the FDCPA *does* apply to repossession companies." *Buzzell v. Citizens Auto. Fin., Inc.*, 802 F. Supp. 2d 1014, 1020 (D. Minn. 2011) (internal citations omitted); *see also Revering v. Norwest Bank Minn., N.A.,* Civ. No. 99–480/RHK/JMM, 1999 WL 33911360, at *5 (D. Minn. Nov. 30, 1999).

UAR, as the "middle man" between the creditor and repossession company, also operates to enforce security interests and is similarly subject to FDCPA § 1692f(6). *See Buzzell*, 802 F. Supp. 2d at 1021 (holding that FDCPA § 1692f(6) applies to a "middle man" just as it does a repossession company). Defendants argue that the lack of a FDCPA claim against Santander is an effective concession that Santander had a present right of possession that must apply to UAR and 11th Hour as well. (Defs.' Mem. at 13.) However, "creditors" are defined separately under FDCPA § 1692a(4), and are not considered "debt collectors" for purposes of the FDCPA. "Debt collectors" are "third party collection agents working for a debt owner[, not a] debt owner seeking to collect debts for itself." *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 83 (2017). Plaintiff could not have pleaded that Santander was a "debt collector" for purposes of § 1692f(6) because Santander is alleged to own the security interest at issue. (Am. Compl. ¶ 9.)

Accordingly, Plaintiff has sufficiently pled that 11th Hour and UAR are "debt collectors" for purposes of FDCPA § 1692f(6).

### b.    FDCPA § 1692f(6)'s "Present Right to Possession"

FDCPA § 1692f(6) prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt" by:

> Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—
> (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
> (B) there is no present intention to take possession of the property; or
> (C) the property is exempt by law from such dispossession or disablement.

15. U.S.C. § 1692f(6).

Plaintiff argues that Defendants violated § 1692f(6) because there was no "present right to possession of the property" at the time of the attempted repossession. She argues that while 11th Hour and UAR may have had the right to possession initially, that their possessory right was voided by Defendants' breach of the peace under Minn. Stat. § 336.9-609. (Opp'n at 11-14.) Defendants argue that there was no breach of the peace, and regardless, that under Minnesota law a breach of the peace cannot abrogate the present right to possession for FDCPA § 1692f(6). (Defs.' Mem. at 13-14.)

"A court should look to state law requirements to determine whether there was a present right to possession under the FDCPA." *Revering*, 1999 WL 33911360, at *5. Under Minnesota law, the "present right to possession" for purposes of FDCPA § 1692f(6) is defined by Minn. Stat. § 336.9-609. *See Freeman v. Ally Fin. Inc.*, 528 F. Supp. 3d 1038, 1043 (D. Minn. 2021). Minn. Stat. § 336.9-609 states:

> (a) Possession; rendering equipment unusable; disposition on debtor's premises. After default, a secured party:
>     (1) may take possession of the collateral; and
>     (2) without removal, may render equipment unusable and dispose of collateral on a debtor's premises under section 336.9-610.
> (b) Judicial and nonjudicial process. A secured party may proceed under subsection (a):
>     (1) pursuant to judicial process; or
>     (2) without judicial process, if it proceeds without breach of the peace.

Violations of Minnesota law can void the "present right to possession" required to sustain a FDCPA §1692f(6) claim. For example, to have the "present right to possession" under the FDCPA, a creditor must notify a debtor prior to exercising its right to self-help repossession under Minn. Stat. § 336-609. [2] *See Akerlund v. TCF Nat'l Bank of Minnesota*, No. CIV. 99-1537 (MJD/JGL), 2001 WL 1631440, at *5 (D. Minn. June 11, 2001); *see also Buzzell*, 802 F. Supp. 2d at 1023 (holding that the defendants violated FDCPA § 1692f(6) where they were legally obligated to provide notice and did not provide notice before repossession, voiding their present right to possess the vehicle as a matter of law).

The Eighth Circuit considered whether the FDCPA "present right to possession" could be abrogated by a breach of the peace under Minnesota law in *Clarin v. Minnesota Repossessors, Inc.*, 198 F.3d 661, 665 (8th Cir. 1999). The Eighth Circuit held that claims under FDCPA §1692f(6) relied on a finding of breach of the peace, because wrongful possession is determined by the Minnesota statute.

> Because we find no breach of the peace under the Minnesota UCC, the Clarins's [FDCPA] claim fails as well. The [FDCPA] requires a wrongful possession for a claim to be maintained. *See* 15 U.S.C. § 1692f(6). Minnesota Repossessors had a present right of possession of the car under the Act. *See Clark v. Auto Recovery Bureau Conn., Inc.,* 889 F.Supp. 543, 547 (D. Conn. 1994); *see also* Barkley Clark, *The Law of Secured Transactions under the Uniform Commercial Code* ¶ 4.05 [2][b] (Rev. ed. Supp. 1997). Accordingly, the Fair Debt Collection Practices Act claim fails.

---

[2] Minn. Stat. § 336.9–503 was renumbered as Minn. Stat. § 336.9–609 upon Minnesota's adoption of revised Article 9 of the UCC, but the language and interpretation by Minnesota courts remained the same. *See Nelson v. BMW Fin. Servs. NA, LLC*, No. CV 15-2661 (ADM/SER), 2015 WL 8328073, at *2 n.2 (D. Minn. Dec. 8, 2015).

*Clarin*, 198 F.3d at 665. The court relied on *Clark v. Auto Recovery Bureau Conn., Inc.*, a case in which the District Court of Connecticut analyzed the Connecticut UCC, which has the same wrongful repossession provision as Minn. Stat. § 336.9-609, and held that the "critical question under section 1692f(6) is whether defendant had a 'present right'" to the collateral. 889 F. Supp. 543, 546 (D. Conn. 1994). The Court looked to Article 9 of the UCC, which entitles the defendant to self-help repossession, "as long as the repossession did not engender a breach of peace." *Id.* at 546-47. The Eighth Circuit in *Clarin* treated the question of whether a breach of the peace occurred as determinative of a violation of both Minn. Stat. § 336.9-609 and FDCPA § 1692f(6).

Prior to the Eighth Circuit's decision in *Clarin*, a Minnesota District Court case appeared to narrow the impact of breach of the peace on the FDCPA "present right to possession" under Minnesota law but nonetheless upheld the requirement that a repossession must comply with Minn. Stat. § 336.9-609 to avoid liability under the FDCPA. *See James v. Ford Motor Credit Co.*, 842 F. Supp. 1202, 1208-10 (D. Minn. 1994), *aff'd on other grounds*, 47 F.3d 961 (8th Cir. 1995). The Court held that an objection by the plaintiff to the repossession was not sufficient for the defendants to lose the present right of possession and be brought within the scope of the FDCPA. *Id.* at 1209. Additionally, the *James* Court found that a breach of the peace after the repossession was already complete could not dispossess the defendants of their present right to possession, thus holding that the repossession in that case was properly executed under Minnesota law. *Id.* Yet, the Court in *Oehrlein v. Western Funding, Inc.* held the opposite—that is that "a breach of peace may limit the manner in which repossession

may be effected but it does not abrogate the right to present possession." Civil No. 97-2726 (DWF/AJB), 1999 U.S. Dist. LEXIS 17919, *13 (D. Minn. Jan. 26, 1999).

*Oehrlein*'s holding was explicitly rejected in the months following the decision. In *Ripka v. City & Cnty. Emps. Credit Union*, the court considered three cases—*James*, *Clarin v. Norwest Bank Minn.,* Civ. No. 972003 (MJD/AJB), 1999 WL 33912312 (D. Minn. Mar. 8, 1999), and *Oehrlein*—before granting the defendants' motion for summary judgment on the plaintiffs' FDCPA claim, because "as a matter of law, [the repossessor] did not breach the peace and thereby abrogate [the bank's] right to present possession." No. CIV. 98-132(DSD/JMM), 1999 WL 33912090, at *2-3 (D. Minn. Apr. 12, 1999). Similarly, in *Saice v. MidAmerica Bank*, the Court, recognizing that there was a split in the law, denied a motion for summary judgment on the FDCPA claim because "the question of defendant's present right to possess the Buick [was] still unresolved" where the plaintiffs demonstrated a genuine fact issue as to whether there was a breach of the peace during the repossession. No. CIV-98-2396 (DSD/JMM), 1999 WL 33911356, at *5 (D. Minn. Sept. 30, 1999) (finding that the "critical question" when considering FDCPA § 1692f(6) was whether the defendant had the present right to the property under Article 9 of the UCC.)

Defendants argue that a breach of the peace does not necessarily suspend a repossession company's right to possession. (Defs.' Reply Mem. in Supp. of their Mot. to Dismiss [Doc. No. 22] ("Reply"), at 8-10.) They cite *Akerlund*, where the plaintiffs argued that the defendants were liable under § 1692f(6) when they violated a Postal Service regulation prohibiting collecting private debts on postal property. *Akerlund*, 2001

10

WL 1631440, at *6. There, the Court "decline[d] to apply the breach of peace doctrine so broadly," instead holding that the defendants "did not lose the present right to possession because they violated a Postal Service regulation" and so, did not violate the FDCPA despite the breach of the peace. *Id.; see also Osborne v. Minnesota Recovery Bureau, Inc.*, No. 04-1167 (JRT/FLN), 2006 WL 1314420, at *1 (D. Minn. May 12, 2006) (holding that the defendants had the present right to possession despite a breach of the peace and dismissing the FDCPA claim.)

Despite these lower court decisions, the Eighth Circuit in *Clarin* was clear that a breach of the peace does suspend a repossession company's present right to possession. *Clarin*, 198 F.3d at 665. The Minnesota District Court has followed *Clarin*'s lead.  *See Allen v. Fidelity Fin. Servs.*, No. Civ.98–1725 (ADM/AJB), 1999 WL 33911359 (D. Minn. Dec. 16, 1999); *see also Moore v. Cap. One N.A.*, No. CV 14-4745, 2016 WL 1627604, at *2 (D. Minn. Apr. 22, 2016) (holding that because "there was no breach of the peace, [plaintiff]'s claims that [defendant] violated the FDCPA and Minnesota's repossession statute, and committed conversion fail.")

*Clarin* and the Minnesota cases that follow are consistent with the interpretation of UCC Article 9 self-help repossession statutes in other jurisdictions. Breaches of the peace by repossession companies are considered "the type of abusive practice Congress sought to prevent in enacting FDCPA and specifically § 1692f(6)." *Alexander v. Blackhawk Recovery & Investigation, L.L.C.*, 731 F. Supp. 2d 674, 680–81 (E.D. Mich. 2010) (holding that the plaintiff sufficiently alleged a breach of the peace and "thereby lost its right to possession of the vehicle" for purposes of FDCPA § 1692f(6)). An analysis of

breach of the peace to determine present right to possession under FDCPA § 1692f(6) is

the "majority approach" taken by federal courts. *Westbrook v. NASA Fed. Credit Union*,

No. 3:17-CV-00534-AKK, 2019 WL 1056356, at *3 n.3 (N.D. Ala. Mar. 6, 2019), *aff'd*

*on other grounds*, 799 F. App'x 722 (11th Cir. 2020) (collecting cases); *see also Clark v.*

*PAR, Inc.*, No. CV-15-02322, 2015 WL 13781846, at *3-5. (C.D. Cal. July 22, 2015)

(rejecting the reasoning in *Oehrlein, Akerlund,* and *Osborne* and holding that the

defendant was liable under the FDCPA because it did not have the present right to the

collateral where it breached the peace during the attempted repossession).

Consistent with *Clarin*, under Minnesota law, a breach of the peace can

void Defendants' present right to possession for purposes of FDCPA § 1692f(6).

### 2.      Breach of the Peace (Count II)

Plaintiff alleges that the attempted repossession breached the peace, violating

Minn. Stat. § 336.9-609 and the FDCPA (Am. Compl. ¶¶ 47, 49 (Counts I and II).)

Defendants argue that there was no breach of the peace under Minnesota law. (Defs.'

Mem. at 13-14.) Minnesota law defines a breach of the peace as a "violation of the public

order, a disturbance of public tranquility, by an act or conduct inciting to violence or

tending to provoke or excite others to breach the peace [including] any violation of any

law enacted to preserve peace and good order." *Moore*, 2016 WL 1627604, at *2

(quoting *Bloomquist v. First Nat'l Bank of Elk River*, 378 N.W.2d 81, 84-85 (Minn. Ct.

App. 1985)). Under Minnesota law, the Court generally considers five factors to

determine whether a repossession breached the peace: "(1) where the repossession took

place, (2) the debtor's express or constructive consent, (3) the reactions of third parties,

(4) the type of premises entered, and (5) the creditor's use of deception." *Clarin*, 198 F.3d at 664. Evaluating the alleged breach of the peace using these *Clarin* factors, Defendants note that the attempted repossession took place in a public parking lot, there were no witnesses or commotion, and no deception. (Defs.' Mem. at 14; Reply at 9-10.) Plaintiff argues that there was no consent by Plaintiff to the repossession and the tow truck lifting the Vehicle with Plaintiff inside constitutes a breach of the peace. (Opp'n at 6-7.)

Lifting a vehicle with an occupant inside has been found to constitute a breach of the peace in other jurisdictions. *See e.g.*, *Nieves v. Able Auto Adjusters*, No. CV-18-8262 (AGRx), 2019 WL 13043035, at *1 (C.D. Cal. Mar. 12, 2019) (holding that "a motion to dismiss cannot be granted on the grounds that no breach of the peace occurred as a matter of law" because "attempting to repossess a car while an occupant is known to be in it," could be a breach of the peace); *see also Smith v. AFS Acceptance, LLC*, No. 11 C 5340, 2012 WL 1969415, at *4 (N.D. Ill. June 1, 2012) (denying motion to dismiss § 1692f(6) claim after finding a breach of the peace was sufficiently pled where plaintiffs jumped into the vehicle while it was being towed and defendant's employees continued to tow the vehicle); *Sinegal v. Big Horn Auto Sales, Inc.*, CIVIL ACTION No. H-21-3102, 2022 WL 799908, at *3 (S.D. Tex. Mar. 16, 2022) (denying motion to dismiss FDCPA § 1692f(6) claim because breach of the peace was sufficiently alleged where the tow truck crashed into the plaintiff's vehicle and then lifted it onto the tow truck with two occupants inside, injuring the plaintiff); *Thomas v. Gen. Motors Fin. Co., Inc.*, No. 5:19-CV-1418-DAE, 2020 WL 8771387, at *4 (W.D. Tex. Mar. 18, 2020) (denying motion to dismiss where the plaintiff alleged that the defendant "did not have a 'present right' to possession" when it

13

towed her vehicle while she was inside of it, thereby committing a breach of the peace). At the motion to dismiss stage, an allegation by Plaintiff that the repossession agents knew she was in the Vehicle when it was lifted is sufficient to sustain a claim for breach of the peace.

Defendants argue that Minnesota courts have required a threat of violence, or the commission of some other offense in finding that a breach of the peace has occurred, and that Plaintiff has not alleged any such violence. (Reply at 11-12, citing *Revering*, 1999 WL 33911360, at *4 ("A breach of the peace requires violence or the threat of violence, or the commission of some other offense.")). Plaintiff argues that lifting a car with someone inside is a sufficient allegation of violence or threatening violence. (Opp'n at 9.)

The Court agrees. A factfinder could plausibly find that lifting a vehicle with an occupant inside was violent or threatened violence, particularly as Plaintiff has alleged that she initially thought a car had collided with hers, that the 11th Hour employees knew she was in the Vehicle at the time, and that lifting the Vehicle caused damage to the Vehicle. (Am. Compl. ¶¶ 21, 24, 42.)

Plaintiff argues that the damages to the bumper caused by the attempted repossession constitute an independent factual basis for finding breach of the peace. (Opp'n at 9-10.) In support, Plaintiff cites to a Florida case that held that "[a] breach of peace can occur if the secured party damages property of the debtor while affecting repossession." *Quest v. Barnett Bank of Pensacola*, 397 So. 2d 1020, 1024 (Fla. Dist. Ct. App. 1981). *Quest*, however, does not represent the prevailing view, which requires more than damage for a finding of breach of the peace. *See Rivera v. Dealer Funding, LLC*, 178 F. Supp. 3d

272, 281 n.7 (E.D. Pa. 2016) (declining to follow *Quest* and granting motion to dismiss because damage to the vehicle during repossession was not sufficient to allege that a breach of the peace occurred). Damage to the Vehicle is not sufficient on its own to support Plaintiff's breach of the peace argument; however, damage is considered as part of the breach of the peace analysis.

Defendants also argue that the repossession was complete prior to any possible breach of the peace because the tow truck had lifted the Vehicle before Plaintiff objected, noting that under Minnesota law, any breach of the peace after a repossession is complete does not support a claim under Minn. Stat. § 336.9-609. (Defs.' Mem. at 14; Reply at 9-10.) Defendants cite *James*, 842 F. Supp. at 1209 and *Thompson v. First State Bank of Fertile*, 709 N.W.2d 307, 309 (Minn. Ct. App. 2006) to argue that "[o]nce a repossession agent has gained sufficient dominion over collateral to control it, the repossession has been completed." In *James*, the repossessor was in control of the vehicle for approximately one hour after removing it from a parking lot when he was attacked by the plaintiff. *Id.* The court found that "[i]t would be unjust to hold that the violence caused by James in a public place after the repossession was complete could somehow dispossess defendants of their present right to possession." *Id.*

Similarly, in *Thompson*, the repossession agent hooked the vehicle to his tow truck, lifting the rear wheels from the grounds, and then walked up to the plaintiff's house to ask if he wanted to remove personal items before the car was towed away. *Thompson*, 709 N.W.2d at 309. The court found that the ensuing conversation between the parties, and the agent's entrance into the plaintiff's home to retrieve the car keys, were not a breach of the

peace that would make the repossession wrongful, because the repossession had already been completed. *Id.* at 311.

> When he lifted the wheels from the ground, Minske gained sufficient dominion over the Tahoe to control it. Therefore, the repossession was complete when the wheels were lifted from the ground, and any objections to the repossession that Thompson made to Minske after that point could not dispossess the bank of its right to possession.

*Id.*

Defendants argue that Plaintiff has not alleged any objection or interaction between the parties prior to the tow truck lifting the Vehicle, so, as in *Thompson*, there could be no breach of the peace prior to the repossession agents taking control and completing the repossession. (Defs.' Mem. at 14.) However, the facts alleged by Plaintiff differ from *Thompson*. First, Plaintiff alleges that she was inside the Vehicle when the rear wheels were lifted off the ground. (Am. Compl. ¶¶ 23-25.). A factfinder could plausibly find that lifting the rear tires while Plaintiff was still inside the Vehicle was a breach of the peace even without an objection from the Plaintiff. Second, it is alleged that Plaintiff was never without the vehicle or keys to it and so possession could not have been complete.

Breach of the peace is a fact-intensive inquiry, and Plaintiff has alleged sufficient facts to plausibly allege that a breach of the peace occurred. She does not have to prove her claims or offer evidence at this stage. *See Freeman*, 528 F. Supp. 3d at 1048; *see also Johnson v. Credit Acceptance Corp.*, 165 F. Supp. 2d 923, 930 (D. Minn. 2001) (holding that "[w]hether or not such allegations [of an altercation, objection to the repossession, and damage to the vehicle] support a finding for breach of the peace is a matter for the factfinder.").

Accordingly, the Court denies Defendants' Motion to Dismiss the claim of breach of the peace as to all Defendants.

### 3. Conversion (Count III)

Defendants also move to dismiss Plaintiff's claim for conversion, arguing that Plaintiff did not state a plausible claim because 1) Defendants had a present right of possession, 2) Plaintiff was not deprived of the use or possession of the Vehicle, and 3) any interference with its use was not permanent or indefinite. (Defs.' Mem. at 15.) Plaintiff subsequently withdrew her conversion claims against Santander and UAR. The parties still dispute whether 11th Hour is liable for conversion. (Opp'n at 15-16.)

Defendants first argue that 11th Hour had a present right to possession and lawful justification to repossess the Vehicle, so it could not be liable for conversion. (Defs.' Mem. at 15; Reply at 13.) Conversion is "an act of willful interference with personal property, 'done without lawful justification by which any person entitled thereto is deprived of use and possession.'" *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997) (quoting *Larson v. Archer–Daniels–Midland Co.*, 32 N.W.2d 649, 650 (1948)). The same standard applies for conversion in Minnesota common law as for FDCPA § 1692f(6); present right of possession is defined by Minn. Stat. § 336.9-609. *See Buzzell*, 802 F. Supp. 2d at 1025 (holding that due to inadequate notice the defendants did not have a lawful right to repossess the vehicle and therefore, the lack of a present right to possession under the FDCPA created liability for conversion as well); *see also Moore*, 2016 WL 1627604, at *2 ("Because there was no breach of the peace, Moore's claims that MRI violated the FDCPA and Minnesota's repossession statute, and committed

conversion fail."). Plaintiff has plausibly alleged that Defendants lost their right to possession by breaching the peace and thus a conversion claim has been plausibly alleged against 11th Hour.

Under Minnesota common law, the elements of conversion are "(1) the plaintiff has a property interest and (2) the defendant deprives the plaintiff of that interest." *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 986 (8th Cir. 2008). Conversion requires "an execution of dominion over the goods which is inconsistent with and in repudiation of the owner's right to the goods or some act done which destroys or changes their character or deprives the owner of possession permanently or for an indefinite length of time." *Bloomquist*, 378 N.W.2d at 86 (quoting *Hildegarde, Inc. v. Wright*, 70 N.W.2d 257, 259 (1955)).

Defendants argue that Plaintiff was not deprived of the use and possession of the Vehicle, and that any interference with Plaintiff's possession was neither permanent nor indefinite. (Defs.' Mem. at 15; Reply at 12-13.) Plaintiff argues that 11th Hour interfered with her use and right of control over the Vehicle and is therefore liable for conversion. (Opp'n at 16-18.)

Specifically, Plaintiff argues that she was deprived of the use of the Vehicle when the repossession agents blocked the Vehicle from leaving the McDonald's parking lot. (Opp'n at 16.) Plaintiff alleges that this interference lasted for the duration of her conversation with the 11th Hour employees plus what "seemed like 20 minutes" while she waited for them to leave. (Am. Compl. ¶¶ 23-25, 40-41.) "To constitute conversion, interference must be either permanent or must last 'for an indefinite length of time.'"

*Stone v. Credit Acceptance Corp.*, No. CV 19-1711, 2019 WL 6716152, at *2 (D. Minn. Dec. 10, 2019) (quoting *Bloom v. Hennepin Cnty.*, 783 F. Supp. 418, 441 (D. Minn. 1992)). Accordingly, an interference with the use of the Vehicle for approximately 30 minutes must be a sufficiently "indefinite length of time" under Minnesota law to support Plaintiff's conversion claim.

Typically, "what constitutes an 'indefinite length of time' is a question of fact for the jury not properly determined at this stage in the proceedings." *Stone*, 2019 WL 6716152, at *2 (denying motion to dismiss conversion claim where the vehicle was returned after five days); see *also Johnson*, 165 F. Supp. 2d at 930 (denying motion for summary judgment where car was dispossessed for two days, because "a jury could find that by repossessing her car, albeit for a short period of time, and her car keys was in repudiation [of] her ownership rights to the car.").

In support of her claim that 30 minutes can be considered an "indefinite" period of time, Plaintiff relies on Illustration 4 from the Second Restatement of Torts in which the converter takes a hat from a restaurant, intending to steal it, but as he approaches the door turns around and returns it. (Opp'n at 18.) This example shows that temporary dispossession can constitute conversion under the Restatement, but Plaintiff does not cite any support for finding conversion for such a short interference with use under Minnesota law. In another case, this Court held that an interference with the plaintiff's access to funds in her bank account for a 24-hour period did not "demonstrate a permanent or indefinite interference sufficient to support a claim for conversion." *Olen v. N. Tier Retail, LLC*, No. CIV. 11-2665, 2012 WL 1580994, at *5 (D. Minn. May 4, 2012).

Conversion is meant as a remedy for a complete taking or prolonged interference with use, "[t]he fair market value measurement of damages reflects the necessary high degree of interference." *Olen*, 2012 WL 1580994, at *5. Plaintiff argues that the Defendants' clear lack of good faith after damaging the vehicle and abrogating their right to possession is what causes their actions to transform from a trespass to chattel to conversion. (Opp'n at 19.) However, Plaintiff offers no support for her contention that facts sufficient to plausibly allege trespass to chattel plus a lack of good faith is sufficient to plead a conversion claim. Instead, in cases "where the interference with the plaintiff's property right is incomplete" trespass to chattel "may be a more appropriate remedy." *Buzzell*, 802 F. Supp. 2d at 1024.

Plaintiff's allegation of approximately 30 minutes of interference with the use of her Vehicle cannot support a claim for conversion. The Court grants Defendants' Motion to Dismiss Plaintiff's claim for conversion.

### 4.    Trespass to Chattel (Count IV)

Plaintiff initially brought a trespass to chattel claim against all Defendants. (Am. Compl. ¶ 54.) Defendants moved to dismiss the claim as to Defendants Santander and UAR. (Mot. to Dismiss ¶ 5.) In response, Plaintiff withdrew her trespass to chattel claim against Santander and UAR. (Opp'n at 15-16.) Accordingly, the claim for trespass to chattel against 11th Hour remains, and the Court dismisses the trespass to chattel claim as to Santander and UAR.

### 5.      Punitive Damages

Defendants finally move to dismiss Plaintiff's claim for punitive damages, arguing that Plaintiff did not state a claim because (1) Plaintiff did not abide by the procedures of Minn. Stat. § 549.191 when amending her complaint to add a claim for punitive damages; and (2) Plaintiff's allegations do not make out a prima facie case that Defendants acted with deliberate disregard for the rights or safety of others, including Plaintiff. (Defs.' Mem. at 4-11; Reply at 2-6.)

### a.      Applicable Procedural Law

Defendants argue that Plaintiff failed to seek leave of court to add a claim for punitive damages prior to Defendants' answer, in violation of Minn. Stat. § 549.191. (Reply at 2.) Plaintiffs argue that Rule 15 of the Federal Rules of Civil Procedure controls rather than Minn. Stat. § 549.191.

Minn. Stat. § 549.191 requires that the party seeking punitive damages make a motion to amend accompanied by one or more affidavits showing the basis for its claim. This motion is then heard by the Court, which considers whether the party has provided prima facie evidence in support of its claim. *Id.* Only if the court grants approval may the moving party amend its pleadings. *Id.* Conversely, Rule 15(a)(1) provides that a party may amend its pleading once as a matter of course no later than "(A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." After this time expires or the party has amended once as of right, the party must seek leave to amend, and the Court must "freely grant leave when justice so

requires." Rule 15(a)(2). Although this is a liberal standard, it does not give parties an absolute right to amend their pleadings. *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008).

Under the long-standing doctrine established in *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts sitting in diversity apply state substantive law and federal procedural law. The U.S. Supreme Court most recently clarified this doctrine in *Shady Grove Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010). "*Shady Grove* instructs that '[a] federal court exercising diversity jurisdiction should not apply a state law or rule if (1) a Federal Rule of Civil Procedure 'answer[s] the same question' as the state law or rule and (2) the Federal Rule does not violate the Rules Enabling Act." *Dolphin Kickboxing Co. v. Franchoice, Inc.*, 335 F.R.D. 393, 398 (D. Minn. 2020) (internal citations omitted).

The question of whether Rule 15 or Minn. Stat. § 549.191 applies to punitive damages claims in federal court sitting in diversity jurisdiction has not been decided conclusively. In the absence of precedent from the Eighth Circuit resolving this question, the Court finds that, under the weight of the District of Minnesota's precedent, the proper procedural standard is supplied by Federal Rule 15. *See Dolphin Kickboxing Co.*, 335 F.R.D. at 397-401 (discussing how, since the U.S. Supreme Court's decision in *Shady Grove*, courts in the District of Minnesota have shifted from applying Minn. Stat. § 549.191 to motions to amend to add a claim for punitive damages, to applying Rule 15); *see also Sadeghi-A v. Daimler Trucks North America LLC*, Case No. 19-cv-2373 (MJD/ECW), 2021 WL 856919, *22 (D. Minn. Mar. 8, 2021); *Russ v. Ecklund Logistics, Inc.*, Case No. 19-CV-2719 (DSD/JFD), 2022 WL 856020, *4 (D. Minn. Mar. 23, 2022), *McNamara v.*

*Kuehne*, Case No. 22-cv-47 (NEB/DJF), 2023 WL 2189980, *3 (D. Minn. Feb. 6, 2023);

*Allison Kutz v. NGI Capital, Inc.*, Case No. 22-cv-1623 (NEB/ECW), 2023 WL 5241412,

*4 (D. Minn. Aug. 15, 2023); *but see Inline Packaging, LLC v. Graphic Packaging

International, LLC*, No. 15-cv-3183 (ADM/LIB), 2018 WL 9919941, *4 (D. Minn. Mar.

8, 2018) (holding that Minn. Stat. § 549.191 applies).

Plaintiff's argument for the applicability of Rule 15 is further strengthened by the

specific facts of the instant case. In most cases previously before this Court, the party

seeking to add a claim for punitive damages had sought leave of court to amend its

pleadings under Rule 15(a)(2), and this Court has considered whether the liberal but still

discretionary requirements of Rule 15 apply over the more stringent requirements of Minn.

Stat. § 549.191. *See, e.g., McNamara*, 2023 WL 2189980 at *1; *Inline Packaging, LLC*,

2018 WL 9919941, at *1. This is at the root of the countervailing analysis in *Inline

Packaging, LLC*, which argues that because Rule 15 is discretionary, there is no direct

conflict with state law. *See* 2018 WL 9919941, at *4-5 (citing to Justice Stevens'

concurrence in *Shady Grove*, 559 U.S. at 421, that the determining question is "whether

the scope of the federal rule is sufficiently broad to control the issue before the court,

thereby leaving no room for the operation of seemingly conflicting state law.")

Conversely, Rule 15(a)(1) allows parties to amend their pleadings within 21 days of

either filing or a responsive pleading as of right. As Plaintiff's initial complaint requires a

responsive pleading, which had not yet been filed at the time of Plaintiff's Amended

Complaint, Plaintiff had the right to amend her complaint as a matter of course. This

directly contradicts the procedural requirements of Minn. Stat. § 549.191, as it leaves no

room for Minnesota state law's more stringent procedure to operate. As such, Rule 15 is the applicable procedural standard.

### b.    Prima Facie Case For Punitive Damages

Defendants also argue that Plaintiff's allegations, even if taken as true, do not support a claim for punitive damages pursuant to Minn. Stat. § 549.20. (Reply at 4-6.) Plaintiff does not dispute that Minn. Stat. § 549.20 provides the relevant substantive standard but argues that the Amended Complaint has adequately alleged a claim for punitive damages.

On reviewing a claim for punitive damages on a motion to dismiss, the Court must find prima facie evidence to support the motion. Minn. St. § 549.191. The Court must only examine the evidence in support of the motion, without considering evidence submitted in opposition, to determine whether the plaintiff has met its burden. *See Swanlund v. Shimano Indus. Corp.*, 459 N.W.2d 151, 154 (Mn. Ct. App. 1990).

Under Minn. Stat. § 549.20, subd. 1, punitive damages are only allowed "upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others." A defendant acts with "deliberate disregard for the rights or safety of others" if:

> the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others and: (1) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or (2) deliberately proceeds to act with indifference to the high probability of injury to the rights or safety of others.

*Id*. at subd. 1(b).

Liability for masters or principals for the actions of their agents is limited to instances where:

> (1) the principal authorized the doing and the manner of the act; (2) the agent was unfit and the principal deliberately disregarded a high probability that the agent was unfit; (3) the agent was employed in a managerial capacity with authority to establish policy and make planning level decisions for the principal and was acting in the scope of that employment; or (4) the principal or a managerial agent of the principal, described in clause (3), ratified or approved the act while knowing of its character and probable consequences.

*Id.* at subd. 2. As such, whether Santander and UAR may be liable for punitive damages is subject to a different analysis than liability for 11th Hour. *See generally Barry v. Consolidated Asset Recovery Systems, Inc.*, Civ. No. 18-1194 (MJD/BRT), 2019 WL 351339, *4-5 (D. Minn. Jan. 29, 2019) (analyzing punitive damages for a repossession as to the debt collector and its subcontractor who engaged in a self-help repossession).

### *i.*  **Santander and UAR**

Plaintiff alleges that Santander is a nationally chartered bank and a statutory creditor; that in 2021, Santander and Plaintiff entered into a consumer credit transaction for the purchase of a 2016 Kia; and that upon information and belief, in October 2022, Santander engaged the services of UAR to aid in the repossession of the vehicle. (Am. Compl., ¶¶ 5, 9, 13, and 15.) Regarding UAR, Plaintiff alleges that UAR is a foreign limited liability company and statutory debt collector; that upon information and belief, Santander engaged the services of UAR for the purpose of aiding in the repossession of the vehicle; and UAR assigned the repossession of the vehicle to 11th Hour on Santander's behalf. (Am. Compl., ¶¶6, 10, 15-16.) Plaintiff makes no other specific allegations as to either Santander or UAR.

Plaintiff has not adequately pleaded facts showing that either Santander or UAR were sufficiently involved in the alleged wrongful repossession to support a plausible claim that either party deliberately disregarded Plaintiff's rights or safety. Plaintiff plausibly alleges that Santander hired UAR and UAR hired 11th Hour to repossess her vehicle. However, Plaintiff does not plead any facts that would support the inference that Santander or UAR specifically directed 11th Hour to conduct the repossession in the manner that it allegedly did. Plaintiff also does not plead any facts that Santander or UAR deliberately disregarded a high probability that 11th Hour was unfit; that 11th Hour was employed in a managerial capacity with authority to establish policy and make planning level decisions for Santander or UAR; or that Santander or UAR ratified or approved 11th Hour's actions while knowing of their character and probable consequences.

As such, Plaintiff has not made out a prima facie case for punitive damages against Santander or UAR. Defendant's Motion to Dismiss Plaintiff's claim for punitive damages as to Santander and UAR is granted.

### ii.    11th Hour

Plaintiff's allegations against 11th Hour are more substantial and are discussed *supra*. Defendants argue that these allegations do not show a deliberate disregard for Plaintiff's safety, as the 11th Hour employees conducted "a civil conversation" with her and that "[Plaintiff] was advised to go into the McDonalds or a nearby gas station – safe indoor places - before the repossession attempt was abandoned." (Defs.' Mem. at 10.) Moreover, Defendants argue that Plaintiff is "merely assuming the agent [who tow lifted

her vehicle while she was inside] knew she was in the vehicle at night," and thus there was no deliberate indifference to Plaintiff's safety. (Defs.' Reply at 5-6.)

Defendants' arguments are unavailing. Plaintiff's allegations—that one employee sat in his sedan directly next to Plaintiff's vehicle for 15 to 20 minutes and repeatedly looked at her vehicle (Am. Compl., ¶¶20-22); that the 11th Hour employees towed her vehicle with her still inside, damaging the vehicle (*Id*., ¶¶23-25, 42); and that after doing so the 11th Hour employees "terrified" Plaintiff and repeatedly and without apology told her to leave and find shelter at night in a closed restaurant or a gas station an indeterminate distance away (*Id*., ¶¶26-42)—together suggest that 11th Hour knew that Plaintiff was in her vehicle and chose to tow it anyway.

Taken as true for the purposes of this motion, Plaintiff's allegations concerning11[th] Hour's actions suggest deliberate disregard for Plaintiff's safety, and thus make out a prima facie case for punitive damages. *See Mercer v. D.E.F., Inc.*, 48 B.R. 562, 564-65 (Bankr. Minn. 1985) (granting punitive damages and commenting that where employees of a debt collector kicked at the door of a home for five to ten minutes, damaging it, in order to gain entrance to repossess a stereo, the court was "hard pressed to imagine a more egregious scenario than the actual events under consideration…").

As such, Defendant's Motion to Dismiss Plaintiff's claim for punitive damages as to 11th Hour is denied.

### III.   ORDER

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1.   Defendant's Motion to Dismiss [Doc. No. 10] is **GRANTED IN PART** and **DENIED IN PART**.

2.   Defendants' Motion to Dismiss Plaintiff's FDCPA claim (Count I) against Defendants UAR Direct, LLC and 11th Hour Recovery, LLC is **DENIED**.

3.   Defendants' Motion to Dismiss Plaintiff's Breach of the Peace claim (Count II) is **DENIED** as to all Defendants.

4.   Defendants' Motion to Dismiss Plaintiff's Conversion claim (Count III) is **GRANTED** as to all Defendants. This claim is **DISMISSED WITH PREJUDICE**.

5.   Defendants' Motion to Dismiss Plaintiff's Trespass to Chattel claim (Count IV) is **GRANTED** as to Defendants Santander Bank, N.A. and UAR Direct, LLC. This claim is **DISMISSED WITH PREJUDICE.**

6.   Defendants' Motion to Dismiss Plaintiff's claim for punitive damages against Defendants Santander Bank, N.A. and UAR Direct, LLC is **GRANTED**. This claim is **DISMISSED WITH PREJUDICE.**

7.   Defendants' Motion to Dismiss Plaintiff's claim for punitive damages against Defendant 11th Hour Recovery, LLC is **DENIED**.

Dated: August 28, 2023                                  s/
                                                SUSAN RICHARD NELSON
                                                United States District Judge